UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ELIZABETH BOEY CHAU, M.D., :
                                 Plaintiff, :
                                  :
             -v - :
                                  :
HARTFORD LIFE INSURANCE COMPANY, :
HOWARD FUTERMAN, M.D., EVELYN K. :
BALOGUN, M.D., DAVID HOENIG, M.D., :
DAYTON DENNIS PAYNE, M.D., RELIABLE :
SERVICES, INC., EXAMWORKS GROUP, :
INC., JANE DOE, :
                               Defendants. :
                                  :
---------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/1/2016

1:14-cv-8484-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, District Judge:

I.       INTRODUCTION

      Dr. Chau collected long term disability benefits for a number of years under a benefit plan administered by Hartford Life Insurance Company ("Hartford"). After an anonymous tipster told Hartford that Dr. Chau was faking her disability and committing insurance fraud, Hartford conducted an inquiry, and ultimately terminated Dr. Chau's benefits. Dr. Chau brought this action against Hartford under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking restoration of her benefits. She also asserted a variety of state law claims against Hartford and the other defendants, including tortious interference with contract, negligence, and defamation. Because all of Dr. Chau's state law claims relate to an ERISA plan, the Court finds that they are expressly preempted by ERISA and must be dismissed.

## II.     BACKGROUND[1]

Dr. Elizabeth Boey Chau worked as a primary care physician for West Carver Medical Associates from 1995 until April 2005.  First Amended Complaint, Dkt. No. 26, ¶ 12.  Dr. Chau's employer subscribed to a long term employee benefits plan (the "Plan"), issued and administered by Hartford.  *Id.* ¶ 14.  Dr. Chau was a beneficiary of that Plan.  *Id.* ¶¶ 14, 16.  The parties agree that the Plan was covered by ERISA.

Unfortunately, in January 2005 Dr. Chau was diagnosed with a serious autoimmune disease.  *Id.* ¶¶ 17-26, 28.  The symptoms of her disease are severe.  *Id.*  Among other things, Dr. Chau has experienced several bouts with herpes zoster, a condition that causes Dr. Chau acute pain.  *Id.* ¶¶ 21-24.  The drug therapy prescribed to treat her various conditions put her at greater risk of contracting infectious diseases.  *Id.* ¶ 26.

As a result of her serious illness, Dr. Chau became disabled within the meaning of her long term disability plan.  *Id.* ¶ 28.  Dr. Chau made a claim for disability benefits under the Plan.  *Id.* ¶ 29.  In connection with her claim, Dr. Chau provided Hartford with proof that her illness rendered her incapable of performing her work as a primary care physician.  *Id.* ¶¶ 29, 30.  Harford initially accepted Dr. Chau's claim of disability, and began to pay her disability benefits in January 2005.  *Id.* ¶¶ 32, 33.  Dr. Chau received disability benefits from Hartford without issue for a number of years.

In July 2011, however, an "anonymous tipster"—named as defendant Jane Doe in this suit—called Hartford with scurrilous information about Dr. Chau.  *Id.* ¶¶ 9, 70.  Jane Doe told Hartford that "[s]he represents a group of concerned community members [and] they wanted to report what they felt was a serious insurance fraud . . . had contacted [Hartford] to report this

---

[1] Unless otherwise noted, the facts are taken from the amended complaint, and are accepted as true for the purposes of this Rule 12(b)(6) motion.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

previously . . . the claimant [Dr. Chau] is informing people that she is receiving benefits from [Hartford] . . . but appears to be fully functional in going to the gym, spin classes, [and] travelling . . . ." *Id.* ¶ 70. With this, Jane Doe accused Dr. Chau of faking her disability, and committing insurance fraud. *Id.*

Hartford did not sit on Jane Doe's accusations. Instead, it appears from the complaint that Hartford began an investigation of the tipster's claims that Dr. Chau was faking her disability and committing insurance fraud. Hartford described the tip to a number of people and institutions involved in evaluating Dr. Chau's claimed benefits, repeating the substance of the tip—that Dr. Chau was committing insurance fraud—several times over the course of the succeeding years. *Id.* ¶¶ 71-74. Hartford passed along that information to several doctors, all now defendants in this action: Dr. Howard Futerman, Dr. Evelyn Balogun, Dr. David Hoenig, and Dr. Dayton Dennis Payne.[2] *Id.* Hartford also passed along the substance of the tip to two other defendants in this case: Reliable Review Services, Inc. ("Reliable"), and ExamWorks Group, Inc. ("ExamWorks"). *Id.* In addition, Hartford informed two other companies that perform risk assessment and analytics for insurance companies—Insurance Services, Office Inc. and Verisk Analytics, Inc. *Id.* Dr. Chau claims that all of Hartford's communications regarding the substance of the anonymous tip were made maliciously, with full knowledge of falsity of the tip.

The complaint does not describe with specificity what happened between the date of the tip and March 27, 2013. We know that Hartford undertook a review of Dr. Chau's claims, which the

---

[2] The complaint does not describe any specific acts taken by Reliable, ExamWorks, or any of the physician defendants, other than Dr. Futerman, that allegedly harmed Dr. Chau, or their role in Hartford's evaluation of Dr. Chau's alleged insurance fraud. For that reason, the factual background section of this decision does not describe their role. As context, for the benefit of the reader, however, the Court provides the description of those parties' role as set forth in their motion to dismiss: "Reliable was retained by Hartford to provide board certified independent physician consultants to review Chau's records and/or examine her during Hartford's claim and appeal review process under the Plan. In connection with Hartford's request, Reliable retained Balogun, Hoenig, and Payne, to review Chau's records, and issue reports to Hartford regarding Chau's claimed medical condition." Br. in Supp. of Reliable Defendants' Mot. to Dismiss, Dkt. No. 66, at 3. "ExamWorks was not retained by Hartford, and is an improper party to this lawsuit." *Id.* at 3 n. 1.

complaint describes without substantial factual detail as arbitrary, and contaminated by Hartford's conflicting financial self-interest. *Id.* ¶¶ 38, 48-50, 54-66. At some point during that process, Dr. Futerman conducted a twenty minute examination of Dr. Chau, which she describes as "perfunctory" and "superficial." *Id.* ¶ 64(g). More facts about what happened between the date of the tip and March 2013, the complaint does not care to share.

But on March 27, 2013, Hartford terminated Dr. Chau's benefits under the Plan. *Id.* ¶ 38. Dr. Chau appealed Hartford's decision to terminate her benefits on November 14, 2013. *Id.* ¶ 42. Hartford denied the appeal on January 10, 2014. *Id.* ¶ 44. As a result of Hartford's decision to terminate Dr. Chau's benefits, she has not received her expected monthly benefits payments since March of 2013. *Id.* ¶ 51.

The complaint contains a series of claims against the various defendants. Count I is a claim against Hartford under ERISA. *Id.* ¶¶ 37-68. In her ERISA claim, Dr. Chau asserts that Hartford's termination of her disability benefits was arbitrary and capricious. Dr. Chau contends that Hartford failed to properly evaluate her medical condition, and that the evidence collected by Hartford in its evaluation of her claim does not support Hartford's conclusion that Dr. Chau can perform the essential duties of her former job as a primary care physician. *Id.* ¶ 64. In support of this claim, Dr. Chau points to the superficial, twenty-minute examination by Dr. Futerman, which, the complaint states, did not properly evaluate Dr. Chau's physical limitations. *Id.* ¶ 64(g). Significantly, the relief requested under the ERISA claim includes a request that the Hartford's decision be reversed, and that she be paid all of her prior missed benefits payments. *Id.* ¶ 68. Hartford has not moved to dismiss Dr. Chau's ERISA claim.

Count II of the complaint claims that Hartford defamed Dr. Chau by passing along to others the substance of Jane Doe's tip regarding Dr. Chau's alleged insurance fraud. *Id.* ¶¶ 69-84. Notably, the only corporations and individuals to whom the information was distributed were doctors and

corporate entities that appear to have been involved in the investigation of Dr. Chau's case on behalf of Hartford.  *Id.* ¶¶ 71-74.  Still, Dr. Chau alleges that, at the time that the substance of the tip was communicated, Hartford "knew or should have known that the statements contained therein were untrue."  *Id.* ¶ 76.  Hartford's "publication" of the tip to the people identified by Dr. Chau caused her "extreme humiliation and embarrassment."  *Id.* ¶¶ 76-84.  Dr. Chau claims unspecified general and special damages, compensatory damages, and punitive damages for Hartford's alleged libel and slander.  *Id.* ¶ 84.

Count III of the complaint claims that each of the physician defendants, Reliable, and ExamWorks tortiously interfered with a contract—Dr. Chau's contract with Hartford for long term disability benefits.  *Id.* ¶¶ 85-96.  In support of the claim, the complaint contains bare conclusory allegations with respect to each defendant that "[Insert Name of Defendant], with full knowledge of the contract . . . acting with malice, and to advance her own interests, intentionally interfered with Plaintiff's rights in said contract . . . and set out upon a course of conduct to induce [Hartford] to terminate the contract."  *See, e.g. id* ¶ 89.  The complaint does not state any facts to support these assertions.  But, again, tellingly, the relief requested includes a demand that the Court void the termination of Dr. Chau's benefits under the Plan, and that Hartford be ordered to pay her for her denied past benefits.  *Id.* ¶ 96.

Count IV is a claim against Hartford for fraud.  *Id.* ¶¶ 97-112.  The complaint alleges that Hartford represented to Dr. Chau that it would act "as a fiduciary, without bias and/or conflict, and in the interest of beneficiaries including Plaintiff."  *Id.* ¶ 99.  Dr. Chau relied on those representations, which she states were material.  *Id.* ¶¶ 100-102.  Dr. Chau asserts that "the material representations . . . were knowingly fraudulent misrepresentations at the time they were made to Plaintiff."  *Id.* ¶ 103.  Again, the complaint includes no facts to substantiate its conclusory allegations regarding Hartford's alleged fraud—Dr. Chau points to no specific representations, and no specific

facts to support the claim of fraud.  Again, tellingly, the relief requested includes a demand for "special damages" "in the amount of lost benefits . . ." among other things.  *Id.* ¶ 107.

The next three claims in the complaint are quasi-contractual state law claims against Hartford.  Count V contains a claim for breach of the implied covenant of good faith and fair dealing.  *Id.* ¶ 113-115.  Count VI asserts a claim of unjust enrichment.  *Id.* ¶¶ 116-119.  Count VII is for promissory estoppel.  *Id.* ¶¶ 120-125.  All three counts are as thinly pleaded as the complaint's other state law claims.  The relief demanded in connection with all three of these state law claims is also familiar:  that the Court enter judgment against Hartford "declaring that the termination of Plaintiff's benefits under the contract is void . . . ."  *Id.* ¶¶ 115, 119, 125.

The last claim, Count VIII, asserts that all of the defendants are liable for negligence.  *Id.* ¶¶ 126-140.  According to Dr. Chau, Hartford, Reliable, and ExamWorks all owed her an unspecified duty of care "in connection with performing its obligations and in connection with Plaintiff's medical condition."  *Id.* ¶¶ 127, 129, 131.  The complaint does not assert from whence that duty arose, or, indeed, with respect to Reliable and ExamWorks, precisely what their role in her affairs was at all.  But Dr. Chau asserts that all three were negligent in failing to supervise their employees, agents, and outside consultants in connection with Dr. Chau's medical condition.  *Id.* ¶ 133.  The defendant physicians breached their duty of care to Dr. Chau, she asserts, by "ignoring, not considering and/or properly evaluating Plaintiff's medical conditions."  *Id.* ¶ 139.  Dr. Chau claims unspecified damages to compensate her, again, for her lost benefits, together with additional compensation for her "severe mental anguish, personal pain and suffering . . . extreme humiliation and embarrassment . . . ."  *Id.* ¶ 140.

### III. PROCEDURAL HISTORY

Dr. Chau filed this case on October 23, 2014, at first naming only Hartford as a defendant.  Dkt. No. 1.  In response to that initial complaint, on March 3, 2015, Hartford filed a motion to

dismiss all of the state law claims asserted against it, among other things, on the basis that those claims were preempted under ERISA. Dkt. Nos. 17, 18. On March 23, 2015, Dr. Chau amended her complaint, adding claims against all of the defendants other than Hartford. Dkt. No. 26. Motions to dismiss from defendants were submitted in the months after the filing of the first amended complaint: Hartford's motion was filed in April 2015, Dkt. No. 42, but the other defendants did not file motions to dismiss until late August 2015. Dkt. Nos. 64, 68. The last motion to dismiss was not fully briefed until October 7, 2015. Dkt. No. 79. All of the motions to dismiss assert that the state law claims asserted by Dr. Chau are preempted under ERISA. They also assert a number of alternative bases to dismiss Dr. Chau's state law claims, but because the Court agrees that Dr. Chau's claims are preempted by ERISA, the Court does not reach those arguments.

## IV. ANALYSIS

### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice. *Id.* To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

### B. Dr. Chau's State Law Claims are Preempted by ERISA

#### 1. ERISA Establishes a Comprehensive Civil Enforcement Scheme

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 U.S.C. § 1001(b)). "Section 502(a)(1)(B) of ERISA provides participants or beneficiaries with a civil remedy to recover benefits due under their plans, to enforce rights under their plans, or to clarify rights to future benefits under their plans." *Arditi v. Lighthouse Int'l*, 676 F.3d 294, 299 (2d Cir. 2012) (citing 29 U.S.C. § 1132(a)). Section 502(a) provides, among other things, that a plan participant or beneficiary may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

To establish a "uniform regulatory regime over employee benefit plans," and "to ensure that employee benefit plan regulation [is] exclusively a federal concern," ERISA includes expansive pre-emption provisions. *Davila*, 542 U.S. at 208 (internal quotation marks and citations omitted); *see* ERISA § 514, 29 U.S.C. § 1144. ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144.

#### 2. The "Complete Preemption" Doctrine Does Not Apply

The briefing in this case suggests some confusion regarding two separate, but related, doctrines of preemption applicable to ERISA—so called "complete preemption" and express preemption. The Second Circuit outlined the distinction between the two in *Wurtz v. Rawlings*, 761 F.3d 232 (2d Cir. 2014). The "complete preemption" doctrine is implied from Section 502(a) of ERISA. "Complete preemption" can properly be described as a jurisdictional concept—it permits a

state cause of action brought in state court to be recast "as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction." *Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009) (internal quotations and citations omitted). The Supreme Court has held that Section 502(a) of ERISA "is one of those provisions with such 'extraordinary pre-emptive power' that it 'coverts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Davila*, 542 U.S. at 209 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987)). Thus, "complete preemption" can provide a federal court with subject matter jurisdiction over a state law claim brought in state court. *Wurtz*, 761 F.3d at 239.

But here, Dr. Chau's suit was initially brought in federal court, and the complaint raises a federal question—a claim against Hartford under Section 502(a) of ERISA. Because there is no question regarding the Court's jurisdiction, the Court does not analyze Dr. Chau's state law claims using the doctrine of "complete preemption." Instead, the Court considers whether the claims are expressly preempted by Section 514 of ERISA. "Express preemption is one of the 'three familiar forms' of ordinary defensive preemption (along with conflict and field preemption)." *Wurtz*, 761 F.3d at 238 (citing *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005)). The Court appreciates the parties' confusion—after all, the Court is about to hold that Dr. Chau's state law claims are completely preempted, but the Court does so on the basis of express, defensive preemption, not the confoundingly named "complete preemption" doctrine.

### 3. Dr. Chau's Claims Are Expressly Preempted

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). The preemption "provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). ERISA preemption is not limited to state laws that

specifically affect employee benefit plans; it extends to state common-law contract and tort actions that relate to benefits as well. *See id.* at 47-48. The phrase "'[r]elates to' must be construed in its 'normal sense'—that is, a state law claim is preempted 'if it has a connection with or reference to such a plan.'" *Gilbert v. Burlington Indus.*, 765 F.2d 320, 326–27 (2d Cir. 1985) (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983)).

Thus, the Second Circuit has held that laws that have been ruled preempted by ERISA "are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." *Aetna Life Insurance Company v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989).[3] In other words, "[a] state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir. 1992).

All of the state law claims asserted by Dr. Chau are expressly preempted by ERISA and must be dismissed. Dr. Chau's state law claims all relate to the Plan. Each is premised on Hartford's denial of her benefits under the Plan. Each of the claims makes express reference to the process

---

[3] In *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101 (2d Cir. 2008), the Second Circuit articulated different standards for ERISA preemption of state law statutory claims as opposed to state law common law claims:

> As to state statutory claims, ERISA preempts those that 'provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee.' *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989). As to state common law claims, ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.' *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); *see Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (ERISA preempts claims that 'purport [ ] to provide a remedy for the violation of a right expressly granted by [ERISA]').

*Panecassio*, 532 F.3d at 114. The Court observes that the standard cited as the preemption standard for preemption of state law common law claims, as opposed to statutory claims, arises from the Supreme Court's decision in *Davila*, and related to the "complete preemption" doctrine under Section 502(a). *Davila*, at 542 U.S. 214. The state law claims at issue in *Davila* were asserted violations of duties arising under a state statute—the Texas Health Care Liability Act. *Id.* at 204. The Court also observes that the laws reviewed in *Borges* that led to the conclusion cited included "common law tort and contract actions asserting improper processing of a claim for benefits under an ERISA-covered benefit program . . . ." *Borges*, 869 F.2d at 146. The outcome of the Court's analysis is the same under either standard.

used to make the termination decision under the Plan. And all but one of the claims expressly seeks the same relief that Dr. Chau seeks pursuant to her claim under ERISA—the restoration of her benefits; all of the state law claims seek damages for the consequences of the termination decision. All of the claims, therefore, represent transparent attempts to pursue alternate routes to challenge the denial of Dr. Chau's benefits under the Plan outside of the statutory mechanism established in ERISA.

Count III, claiming that people and entities involved in the evaluation of her claimed benefits are liable for tortious interference with Dr. Chau's contractual rights under the Plan, is a postcard example of the type of state law claim expressly preempted by ERISA. Indeed, the Supreme Court's seminal decision on ERISA preemption, *Pilot Life*, involved a state law claim for tortious interference with contract premised on an ERISA plan's failure to pay benefits. *Pilot Life,* 481 U.S. at 43. Count VIII, Dr. Chau's claim that Hartford and the other defendants acted negligently in their evaluation of her claims under the Plan, also "relates to" the Plan, and, is therefore preempted by ERISA. *See Cicio v. Does,* 385 F.3d 156 (2d Cir. 2004) (affirming dismissal of common law negligence claim against ERISA plan administrator in light of Supreme Court decision in *Davila*); *see also Rubin-Schneiderman v. Merit Behavioral Care Corp.*, 121 Fed. App'x 414, 415 (2d Cir. 2005) (affirming dismissal of common law negligence claims preempted under ERISA).

Three of Dr. Chau's state law claims—Counts V, VI, and VII—are quasi-contractual claims, arising from Hartford's decision to terminate Dr. Chau's benefits under the Plan. All of the claims demand that Hartford's decision be reversed, and that Dr. Chau be paid her benefits. These claims all relate to the Plan and are preempted by ERISA, for it has long been established in this Circuit that breach of contract claims arising from a failure to pay benefits under an ERISA plan are preempted. *See, e.g., Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (collecting cases); *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 8–10 (2d Cir. 1992); *Keiser v. CDC Inv. Management*

*Corp.*, 160 F. Supp. 2d 512, 516–17 (S.D.N.Y. 2001) (collecting cases); *Yoran v. Bronx–Lebanon Hosp. Ctr.*, No. 96-cv-2179, 1999 WL 378350, at *5 (S.D.N.Y. Jun. 10, 1999) (collecting cases).

Dr. Chau's common law fraud claim is also preempted by ERISA. Count IV of the complaint claims that that Hartford committed fraud by representing that it would act as a fiduciary, and without conflict of interest in making its determinations regarding her benefits, when, in fact, its decision-making was conflicted. The damages claimed, again, are restoration of the terminated benefits. But, again, it has long been clearly established that allegations of common-law fraud associated with a failure to pay benefits are preempted. *See, e.g., Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) (citing *Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 516 (5th Cir. 2002) and *Starr v. MGM Mirage*, No. 2:06-cv-00616, 2006 WL 3290299, at *3 (D. Nev. Nov. 7, 2006)); *Ratner v. Local 29 RWDSU Health & Welfare Fund*, No. 98-cv-6808, 2001 WL 11072, at *2 (S.D.N.Y. Jan.4, 2001); *Lewis v. John Hancock Mut. Life Ins. Co.*, 6 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998); *Snyder v. Elliot W. Dann Co., Inc.*, 854 F. Supp. 264, 273 (S.D.N.Y. 1994).

Dr. Chau's defamation claim is also preempted by ERISA. Recently, in *Allen v. Unum Life Insurance Co. of America*, Judge Gibney of the Eastern District of Virginia, had the opportunity to evaluate a similar defamation claim. No. 3:15-cv-219-JAG, 2015 WL 556007 (E.D. Va. Sept. 17, 2015). In a comprehensive and compelling decision, Judge Gibney found the plaintiff's defamation claim to be expressly preempted under Section 514 of ERISA because the claim was asserted as an alternative enforcement mechanism to ERISA. *Id.*, at *3; *see also Puccio v. Standard Ins. Co.*, No. 12-cv-04640-JST, 2013 WL 1411155, at * 5 (N.D. Cal. Apr. 8, 2013) (finding claim for defamation preempted by ERISA where "the alleged statements were made during an examination conducted as part of the plan's claim review . . . made with the intention of interfering with [plaintiff's] attainment of benefits under the plan"), *Thomas v. Telemecanique, Inc.*, 768 F. Supp. 503, 506 (D. Md. 1991)

(finding defamation claim expressly preempted because it was "so intertwined" with the ERISA plan).

Dr. Chau too seeks an alternative remedy for Hartford's termination of her benefits through her defamation claim. The tip was made to Hartford as plan administrator, in connection with Dr. Chau's claimed benefits under the Plan. The false and slanderous remarks by the anonymous tipster described in the complaint were all passed on by Hartford to people and entities who appear to have been hired by or on behalf of Hartford to investigate Dr. Chau's claims, in connection with their review of her claimed benefits under the Plan. The complaint does not allege that the statements were made to any other person. Dr. Chau seeks to avoid the exclusive remedy provided by ERISA, by claiming that the exchange of any false information in the course of a benefits analysis among those involved in the analysis gives rise to an independent state law claim of defamation. This would undermine the comprehensive remedial scheme implemented by Congress in ERISA. The defamation claim relates to the administration of the Plan, and is, therefore, expressly preempted.

### C.  Dr. Chau Does Not Have a Right to a Jury Trial

Finally, because Dr. Chau's only remaining claim is her ERISA claim, the Court will grant Hartford's motion to strike her jury demand from the complaint. The Second Circuit has repeatedly held that "cases involving ERISA benefits are inherently equitable in nature . . . and that no right to jury trial attaches to such claims." *DeFelice v. Am. Int'l Life Assurance Co. of New York*, 112 F.3d 61, 64 (1997) (citing *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251, 1258-59 (2d Cir. 1996) *abrogated on other grounds by Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008)); *Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 (2d Cir. 1998); *see also O'Hara v. National Union Fire Ins. Co.*, 642 F.3d 110, 116 (2d Cir. 2011) ("[T]here is no right to a jury trial in a suit brought to recover ERISA benefits."); *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003) ("[T]here is no right to a jury trial under ERISA.").

## V. CONCLUSION

Because Counts II through VIII of the complaint are expressly preempted by ERISA, and, therefore, cannot be saved by amendment, they are dismissed with prejudice. Dr. Chau is not left without recourse, however. She may pursue the claim pleaded in Count I of the complaint under the statutory scheme established by Congress in ERISA. The Clerk of Court is directed to remove the names of all defendants other than Hartford from the caption of this action, and to terminate the motions pending at Dkt. Nos. 42, 64, and 68.

SO ORDERED.

Dated: March 1, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge