**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
ELIZABETH BOEY CHAU, M.D.,                             :

                      Plaintiff,                   :

     -against-                                       :

                                              **Civ. Act. No.: 14-CV-8484 (GHW)**
HARTFORD LIFE INSURANCE COMPANY,        :
HOWARD FUTERMAN, M.D.,
EVELYN K. BALOGUN, M.D.,                           :    **ORAL ARGUMENT REQUESTED**
DAVID HOENIG, M.D.,
DAYTON DENNIS PAYNE, M.D.,                       :
RELIABLE REVIEW SERVICES, INC.,
EXAMWORKS GROUP, INC.,                             :
JANE DOE,

                                :

                   Defendants.
--------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF HER MOTION TO REQUEST EXTRA RECORD DISCOVERY**

# TABLE OF CONTENTS

**CONTENTS**

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES ...................................................................................iii

INTRODUCTION...................................................................................................2

STATEMENT OF FACTS ......................................................................................2

SUMMARY OF ARGUMENT................................................................................2

ARGUMENT...........................................................................................................3

    **I.**     **UNDER CONTROLLING AUTHORITY THE COURT SHOULD GRANT CHAU'S ERD MOTION FOR A PROPER REVIEW OF HARTFORD'S TERMINATION OF CHAU'S LTD BENEFITS** ........................................................................... 3

        **A.**   *Metro. Life Ins. Co. v. Glenn* **Requires The Court To Include The Structural Conflict Financial Bias As A Factor To Be Weighed In Its Review Of Hartford's Termination Of Chau's LTD Benefits** ...........................................................................................3

        **B.**   **Failure To Permit The Requested Discovery Contradicts The Mandate Of** *Glenn* **Because Absent The Discovery There Is No Basis Upon Which To Examine Or Evaluate The Gravity Of Weight For The Conflict Financial Bias Factor**...............5

    **II.**   **THE FACTS OF THIS CASE JUSTIFY DISCOVERY BEYOND THE ADMINISTRATIVE RECORD BECAUSE CONFLICT AND FINANCIAL BIAS ARE THE ONLY EXPLANATION FOR HARTFORD'S IRRATIONAL TERMINATION OF CHAU'S LTD BENEFITS AND ITS MEDICALLY UNSOUND OPINIONS**.........................................................................................5

        **A.**   **Conflict And Financial Bias Are The Only Explanation For Hartford's Termination Of Chau's LTD Benefits Since It Is Contrary To Any Rational Assessment Of Her Medical Condition And Defies The Overwhelming Evidence Of Her Disabilities**........5

        **B.**   **Conflict And Financial Bias Are The Only Explanation For Hartford's Termination Of Chau's LTD Benefits Since Chau's Numerous Auto-Immune Diseases And Disorders, As Well As The Complications, Manifestations And Medical Treatments Therefor, Are Well-Documented, And Not Denied, But Rather Ignored By Hartford's Irrational Benefits Termination And Medically Unsound Opinions** ......................8

        **C.**   **Conflict And Financial Bias Are The Only Explanation For Hartford's Termination Of Chau's LTD Benefits Since Hartford Ignored The Overwhelming Evidence Of Chau's Medical Condition That Disable Her From Each Of The Essential Duties Of Her Own Occupation As A Patient Treating Internal Medicine Physician In The General Workplace As Articulated In Hartford's Termination Letter**.................10

**III.**  **HARTFORD'S FALSE AND UNSUBSTANTIATED INSURANCE FRAUD ALLEGATION AGAINST CHAU JUSTIFIES DISCOVERY BEYOND THE ADMINISTRATIVE RECORD BECAUSE CONFLICT AND FINANCIAL BIAS ARE THE ONLY EXPLANATION FOR HARTFORD'S DUBIOUS CONTRIVANCE**………………………………………………………………...13

**IV.**  **HARTFORD'S FALSE AND UNSUBSTANTIATED INSURANCE FRAUD ALLEGATION AGAINST CHAU JUSTIFIES DISCOVERY BEYOND THE ADMINISTRATIVE RECORD BECAUSE HARTFORD'S DUBIOUS CONTRIVANCE UNDERMINES ITS FIDUCIARY DUTY TO PROVIDE CHAU A FULL AND FAIR REVIEW OF HER CLAIM** …………………………………………14

**V.**  **CHAU'S CONTINUED ILLNESSES AND CURRENT GRAVE HEALTH STATUS IS A MANIFESTATION OF AND RELATED TO THE SAME MEDICAL CONDITIONS THAT HARTFORD FOUND DISABLING UNDER THE PLAN IN 2004 AND PROVIDES ADDITIONAL SUPPORT FOR EXTRA RECORD DISCOVERY**………………………………………………………………..15

**VI.**  **UNDER THE HIPAA LAWS CHAU IS ENTITLED TO EXTRA RECORD DISCOVERY**………………………………………………………………15

**VII.**  **SCOPE AND NATURE OF DISCOVERY REQUESTED** ..…………………………16

**CONCLUSION**………………………………………………………………17

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alberigo v. The Hartford,* 891 F. Supp. 2d 383 (E.D.N.Y. 2012) ...............................................4, 8, 14

*Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219 (E.D.N.Y. 2008)...................1, 4, 5, 14, 15

*Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133 (2d Cir. 2010)......................................4

*Joyner v. Continental Cas. Co.*, 837 F. Supp. 2d 233 (S.D.N.Y. 2011) ...............................................4

*Mergel v. Prudential Life Ins. Co. of Am.*, No. 09 Civ. 00039, 2009 U.S. Dist. LEXIS 85594, at *1
(S.D.N.Y.  Sept. 1, 2009) .......................................................................................................4, 8, 14

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).................................................1, 3, 4, 5, 8, 14, 15

*Miles v. Principal Life Ins. Co.*, 720 F.3d 472 (2d Cir. 2013)………………………………………..14

*Mitchell v. First Reliance Standard Life Ins. Co.*, 237 F.R.D. 50 (S.D.N.Y. 2006) .............................4

*Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94 (W.D.N.Y. 2000) ......................................................5

*Puri v. Hartford Life & Accident Ins. Co.*, 784 F. Supp. 2d 103, 105 (D. Conn. 2011) .............4, 8, 14

*Reittinger v. Verizon Commc'ns Inc.*, No. 05 Civ. 1487, 2006 U.S. Dist. LEXIS 83293, at *1
(N.D.N.Y. Nov. 15, 2006)………………………………………………………………………..4

*Thomas v. The Hartford Life Ins. Co.*, No. 11 Civ. 1490, 2012 U.S. Dist. LEXIS 183624, at *1
(S.D.N.Y. January 2, 2013)………………………………………………………………………9

*Tretola v. First Unum Life Ins. Co.*, No. 13 Civ. 231, 2013 U.S. Dist. LEXIS 84003, at *1
 (S.D.N.Y. June 13, 2013)......................................................................................................4


**STATUTES AND RULES**


Health Insurance Portability And Accountability Act Of 1996, Public Law 104-191 (1996).............15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
ELIZABETH BOEY CHAU, M.D.,                          :

                Plaintiff,                          :

    -against-                                         :                    **Civ. Act. No.: 14-CV-8484 (GHW)**

HARTFORD LIFE INSURANCE COMPANY,      :
HOWARD FUTERMAN, M.D.,
EVELYN K. BALOGUN, M.D.,                          :                    **ORAL ARGUMENT REQUESTED**
DAVID HOENIG, M.D.,
DAYTON DENNIS PAYNE, M.D.,                       :
RELIABLE REVIEW SERVICES, INC.,
EXAMWORKS GROUP, INC.,                            :
JANE DOE,
                                                                 :
               Defendants.
------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF HER MOTION TO REQUEST EXTRA RECORD DISCOVERY

      Plaintiff, Elizabeth Boey Chau, M.D. ("Chau" or "Plaintiff"), submits this Memorandum of Law in support of her Motion To Request Extra Record Discovery (the "ERD Motion"). Under controlling authority, Chau's request for extra record discovery or discovery beyond the administrative record ("Discovery"), is warranted where, as here, there is a structural conflict financial bias and other bias in Defendant's, Hartford Life Insurance Company's ("Hartford" or "Defendant"), decision-making and on behalf of Hartford's decision-makers and agents. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Moreover, the Discovery is justified because there is, at minimum, a "reasonable chance" that the requested Discovery satisfies the "good cause" standard for allowable discovery in this case. *See Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 227-29 (E.D.N.Y. 2008)  (attached as EXHIBIT 1 to the Declaration of Robert J. Rando, Esq. (hereinafter "Rando Decl.")).

## INTRODUCTION

On March 17, 2016, the court conducted a telephone status conference in this case wherein the Court set a filing date of May 2, 2016 for the ERD Motion. (Dkt. No. 90). On April 26, 2016, the Court granted Plaintiff's request to extend the time to file its ERD Motion to and including May 16, 2016. (Dkt. No. 93). Thus, Chau's ERD Motion is timely filed.

## STATEMENT OF FACTS

The facts of this case are as alleged in the First Amended Complaint. (Dkt. No. 26). Specific facts pertinent to this ERD motion are included in Argument, Section II, herein.

## SUMMARY OF ARGUMENT

As explained in greater detail below, Chau's ERD Motion should be granted since Defendant's arbitrary and capricious termination of Chau's LTD benefits was driven by, motivated by, and suffers from, Hartford's structural conflict financial bias and Hartford's unsubstantiated contrived fictional characterization of Chau as an insurance fraud. These biases pervade every step of Hartford's and its agents' conduct related to Hartford's decision to terminate Chau's LTD benefits rendering Hartford's termination arbitrary and capricious.

A review of the overwhelming objective evidence, as well as the subjective suffering endured by Chau, yields no other conclusion. The overwhelming objective evidence is from no less than ten (10) of Chau's treating medical Doctors, based upon well over 100 hours (6,000 minutes) of treatment/evaluations/examinations/consultations, that unanimously and consistently determine Chau is disabled from performing the essential duties of her own occupation under the Plan (a Patient Treating Internal Medicine Physician).

Chau's disabling medical conditions that existed in 2004, when Hartford declared her disabled from performing the essential duties of her own occupation under the Plan (a Patient

Treating Internal Medicine Physician), have not improved since that time. In fact, at the time of Hartford's termination in 2013 her disabling medical conditions had worsened and her medical/health status was more degraded. Furthermore, the irrationality and fallacy of Hartford's termination, and its biased willfully blind basis for medically its unsound conclusions, and self-contradicting disability determination  flip-flop, have been proven completely erroneous and without any rational basis. The undeniably correct conclusion of Chau's ten (10) treating medical Doctors, as well as their medically sound prescience, that was consciously and willfully ignored by Hartford and its agents, is borne out by the continued degradation of Chau's health status in connection with the manifestations of her insidious diseases that have existed continuously from 2004 (when Hartford declared Chau disabled from performing the essential duties of her own occupation under the Plan) through 2013 (when Hartford terminated Chau's LTD benefits) and to the present.

## ARGUMENT

I.  **UNDER CONTROLLING AUTHORITY THE COURT SHOULD GRANT CHAU'S ERD MOTION FOR A PROPER REVIEW OF HARTFORD'S TERMINATION OF CHAU'S LTD BENEFITS**

A.  *Metro. Life Ins. Co. v. Glenn* **Requires The Court To Include The Structural Conflict Financial Bias As A Factor To Be Weighed In Its Review Of Hartford's Termination Of Chau's LTD Benefits**

Under the Supreme Court decision, *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008), evidence of the structural conflict financial bias created by the dual role of the same entity functioning as the ERISA administrator and payor of the claim, is a factor to be weighed by the Article III Court in conducting a proper review of the ERISA Administrator's benefit determination. *Id*.

"Evidence that a conflict affected a decision may be categorical (such as 'a history of biased claims  administration') or case specific (such as an administrator's deceptive or unreasonable conduct), and may have bearing also on whether a particular decision is arbitrary and capricious."

*Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir. 2010); *Alberigo v. The Hartford,* 891 F. Supp. 2d 383, 396 (E.D.N.Y. 2012) ("wholesale embrace of one medical report supporting a claim denial to the detriment of a contrary report that favors granting benefits was determined in Glenn to be indicative of an administrator's abuse of discretion").

Trial courts in the Second Circuit have allowed a wide ranging scope and nature of extra record discovery in ERISA cases. *See, e.g., Tretola v. First Unum Life Ins. Co.*, No. 13 Civ. 231, 2013 U.S. Dist. LEXIS 84003, at \*4 (S.D.N.Y. June 13, 2013) (permitting discovery of extrinsic evidence in ERISA case and noting the significance of "the extent and nature of the [financial] conflict and the appropriate weight to give to this conflict in the ultimate merits analysis) (attached as EXHIBIT 2 to the Rando Decl.); *Puri v. Hartford Life & Accident Ins. Co.*, 784 F. Supp. 2d 103, 105 (D. Conn. 2011) (decision-maker's pre-conceived bias and financial benefit); *Joyner v. Continental Cas. Co.*, 837 F. Supp. 2d 233, 242 (S.D.N.Y. 2011) (permitting discovery of extrinsic evidence in ERISA case and recognizing the Supreme Court's command in *Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008), "that district courts 'should consider' evidence of financial conflict of interest"); *Mergel v. Prudential Life Ins. Co. of Am.*, No. 09 Civ. 00039,  2009 U.S. Dist. LEXIS 85594, at \*5 - \*6 (S.D.N.Y.  Sept. 1, 2009) (administrator payor's structural conflict financial bias, inconsistent medical opinions, and disability determination discovery) (attached as EXHIBIT 3 to the Rando Decl.); *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 227-29 (E.D.N.Y. 2008) (decision maker's relationship with doctors and consultants who reviewed claim, financial incentives for individuals making claims determinations, criteria used for making claims determinations); *Reittinger v. Verizon Commc'ns Inc.*, No. 05 Civ. 1487, 2006  U.S. Dist. LEXIS 83293, at \*7-\*11 & n.2 (N.D.N.Y. Nov. 15, 2006) (citing and describing various cases permitting ERISA extra record discovery and listing twenty-two wide-ranging categories of allowable extra record  discovery) (attached as EXHIBIT 4 to the Rando Decl.); *Mitchell v. First Reliance Standard Life Ins. Co.*, 237 F.R.D. 50, 53 (S.D.N.Y. 2006) (multiple depositions for extra record discovery) (attached as

EXHIBIT 5 to the Rando Decl.); *Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 111 (W.D.N.Y. 2000) (relationship and financial arrangements with medical advisor and whether medical advisor to plan administrator exercises independent judgment or functions as an arm of the administrator) (attached as EXHIBIT 6 to the Rando Decl.).

      **B.**    **Failure To Permit The Requested Discovery Contradicts The Mandate Of *Glenn* Because Absent The Discovery There Is No Basis Upon Which To Examine Or Evaluate The Gravity Of Weight For The Conflict Financial Bias Factor**

The mandate of *Glenn* is eviscerated without allowing the requested Discovery in this case. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Chau has demonstrated, at minimum and beyond, that there is a reasonable chance the requested discovery will satisfy the good cause standard" for allowable discovery. *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 227-29 (E.D.N.Y. 2008).

**II.**    **THE FACTS OF THIS CASE JUSTIFY DISCOVERY BEYOND THE ADMINISTRATIVE RECORD BECAUSE CONFLICT AND FINANCIAL BIAS ARE THE ONLY EXPLANATION FOR HARTFORD'S IRRATIONAL TERMINATION OF CHAU'S LTD BENEFITS AND ITS MEDICALLY UNSOUND OPINIONS**

  **A.**  **Conflict And Financial Bias Are The Only Explanation For Hartford's Termination Of Chau's LTD Benefits Since It Is Contrary To Any Rational Assessment Of Her Medical Condition And Defies The Overwhelming Evidence Of Her Disabilities**

    **1.**  **Hartford's reliance upon its IME Doctor's, Dr. Futerman's, medically unsound conclusions is not credible and without merit because:**

        a.  Although Dr. Futerman acknowledges that Chau suffers from on-going diseases and syndromes, including Lupus, Systemic Sclerosis, Sjogrens Syndrome, Reynaud's Syndrome, Synovitis and Connective Tissue Disease, he ignores the ever-present and continuing disabling effects of those medical conditions. These on-going diseases and syndromes are well documented by the numerous physicians that have treated Chau.

        b.  Dr. Futerman's assessment is a result of a perfunctory 20 minute consultation and examination with Chau (less than 0.003 thousandths (or 0.3%) of the over 6000 minutes of Chau's treating physicians' consultation/examination time spent with her) in which he ignored the following:

i.  Chau's infection that she was suffering on the day of her examination (as documented by her treating physician, Dr. Gorevic, who treated Chau two hours later on the same day as Dr. Futerman's IME). The infection exemplifies the continual health risks Chau endures as a result of her auto-immune diseases and her compromised immune system from her diseases and the medications she takes to reduce the potentially fatal progression of the diseases.

ii.  Chau's medical conditions that she attempted to inform Dr. Futerman about, and which he specifically told her he was "not interested" in hearing.

iii.  Chau's diagnosed positive patellofemoral crepitations and synovitis, its manifestations, on-going complications and the aggravation from her auto-immune diseases and their impact on her joints, muscles and connective tissues irrespective of her then apparent range of motion or physical appearance which characteristic is subject to the unpredictability of he flare-ups.

iv.  The unpredictable characteristics of Chau's auto-immune diseases respecting the timing, duration and severity of flare-ups.

v.  The side effects of medications necessary to arrest the progression of Chau's auto-immune diseases.

vi.  The diagnoses of numerous physicians that treat Chau for her auto-immune diseases and the complications of those diseases and the treatments therefor.

vii.  The stress-related trigger for flare-ups of Chau's medical condition.

viii.  The danger of exposure to infectious disease presented by Chau's various auto-immune diseases and the corresponding health risk to potential patients that she treats in her own occupation as a Patient Treating Internal Medicine Physician.

ix.  The necessary treatment for Chau which includes a low-impact exercise regime she follows with her gym routine as well as her health-conscious dietary regimen.

x.  The impact of Chau's medical condition on "the "essential duties of an Internal Medicine Doctor in the general workplace" as defined and described by Hartford in the Termination letter.

xi.  The impact of Chau's medical condition on 'the essential duties of an Internal Medicine Doctor in the general workplace' as described by Chau.

xii.  The non-exertional effects of her medical condition.

xiii.  The broader range of Chau's illnesses and disabilities in favor of a focus on his conclusory observation of her physical exertion capability based upon lack of

6

swelling of her joints during his 20-minute visit with her and the fact that she successfully engages in a prescribed regimen of low-impact therapeutic exercises at the gym (when not suffering from a flare-up).

xiv.   His own alleged review of Chau's extensive medical history and reports from the numerous physicians that treat Chau for her various diseases and ailments that all conclude and support the medical bases for Chau's disabilities that prevent her from performing the essential duties of an Internal Medicine Doctor.

xv.   The continually evolving symptoms management for Chau's various diseases and ailments that require constant and vigilant attention and identification for control, treatment and prevention  for active and inactive conditions (due to the unpredictable and unstable nature of flare-ups from her various diseases and ailments).

xvi.   Questions and guidance Dr. Futerman alludes to, as forming the basis for conducting his examination and preparing his report, are neither specifically identified nor specifically answered by him.

**2.   Numerous statements and conclusions describing the basis for termination contained in Hartford's Termination letter are erroneous or based in erroneous presumptions, speculation, mischaracterizations, and medically unsound opinions, such as:**

a.   Contrary to Hartford's assertion, Chau's treating physician, Dr. Gorevic, *has* provided functionality information.

b.   While acknowledging that Dr. Gorevic shows ongoing treatment for "Sjogren's syndrome, Sicca syndrome … cervical issue, knee pain, lupus, fatigue and muscle pain," Hartford concludes that Dr. Gorevic's prognosis that Chau remains unable to work due to "ongoing severe arthritis in [her] knees; neck and shoulder discomfort; and severe fatigue" was somehow "inconsistent with what was in her medical records." These symptoms, and myriad others, are completely consistent with what is contained in her well-documented extensive medical records.

c.   Chau's requisite therapeutic exercise that enables her to maintain minimum daily functions, and delays the potentially fatal progression of her auto-immune diseases (*i.e.*, low impact exercise regime and stress reduction), is perversely characterized as the basis for concluding that she is "able to perform the essential duties and physical demands of [her] Own Occupation."

d.   Contrary to Hartford's assertion, Chau does not attend gym classes on a *daily* basis.

**B. Conflict And Financial Bias Are The Only Explanation For Hartford's Termination Of Chau's LTD Benefits Since Chau's Numerous Auto-Immune Diseases And Disorders, As Well As The Complications, Manifestations And Medical Treatments Therefor, Are Well-Documented, And Not Denied, But Rather Ignored By Hartford's Irrational Benefits Termination And Medically Unsound Opinions**

The symptoms and impairments resulting from Dr. Chau's system sclerosis that render Dr. Chau disabled within the Plan are multifaceted and affect every aspect of her well-being. Dr. Chau's system sclerosis, is well-documented by all of her treating physicians and acknowledged by Hartford's own RN and Dr. Futerman. Specifically, Hartford's Termination Letter identifies system sclerosis as the basis for her LTD: "You received LTD benefits for the period 09/24/2004-03/31/2013 for Total Disability because you were unable to perform the duties of your Own Occupation due to symptoms and impairment resulting from ***system sclerosis***,[1] cervical radiculopathy, and joint pain." (*emphasis added*)).

The procedural irregularities demonstrated by Hartford's contradictory conclusions in the face of Chau's worsening medical conditions, that Hartford found disabling under the Plan almost ten years prior to the termination, provides in itself sufficient basis for allowing the requested discovery. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008) (inconsistent position that is financially advantageous gives more weight to the conflict financial bias factor); *Alberigo v. The Hartford,* 891 F. Supp. 2d 383, 401 (E.D.N.Y. 2012) (noting case finding denial of benefits was "irrational" where the claimant's medical condition worsened); *Puri v. Hartford Life & Accident Ins. Co.*, 784 F. Supp. 2d 103, 105 (D. Conn. 2011) (allowing extra record discovery of decision-maker's pre-conceived bias and financial benefit); *Mergel v. Prudential Life Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 85594, at *5 - *6 (S.D.N.Y.  Sept. 1, 2009) (allowing extra record discovery of administrator payor's structural conflict financial bias, inconsistent medical opinions, and disability determination). Likewise, Hartford's irrational mischaracterizations of how Chau's medical condition and diseases

---

[1] Systemic Sclerosis is an autoimmune disease in which the immune system attacks the body and destroys healthy tissue in any of the body organs because the immune system mistakenly thinks it is a foreign substance, body or infection.

do not disable her from the realities of the essential duties of Chau's own occupation as a Patient Treating Internal Medicine Doctor calls out for the requested discovery. *See Thomas v. The Hartford Life Ins. Co.*, No. 11 Civ. 1490, 2012 U.S. Dist. LEXIS 183624 at *1, *11-12 (S.D.N.Y. January 2, 2013) (mischaracterizing realities of whether claimant can perform essential job duties is not a full and fair investigation and benefits denial is arbitrary and capricious) (attached as EXHIBIT 7 to the Rando Decl.).

The effect of Dr. Chau's auto-immune diseases, including the ***system sclerosis***, on her organs results in her being disabled under the Plan as follows:

1. Internal organ involvement – Dr. Chau has experienced flare-ups that have affected her heart, lungs digestive system, joints, muscles and connective tissues.

2. These flare-ups are unpredictable in terms of occurrence, duration and severity.

3. The impact on her internal organs has also been documented:

   a. Heart problems.

   b. Lung capacity problems.

   c. Digestive system problems.
      (medical history including significant gastro esophageal reflux disease);

   d. Skin herpes zoster.

   e. Joint pain, swelling, damage, patellofemoral syndrome/synovitis.

   f. Muscle and connective tissue involvement.

   g. Higher risk of lymphoma.

4. The adverse consequences resulting from medications Dr. Chau must take to slow the potentially fatal progression of her auto-immune diseases yield side-effects that are dangerous and also render her disabled within the meaning of the Plan.

5. The documented medications that Dr. Chau must take are numerous and require vigilant monitoring, and although they may temporarily result in controlling some of her symptoms must be curtailed or discontinued at times because of the severe side-effects.

   These side-effects result in the following:

   a. Dr. Chau is highly susceptible to infectious agents and any communicable disease by an order of magnitude beyond the general population of non-

9

disabled individuals (*e.g.*, those not afflicted with or being treated for the auto-immune diseases she suffers).

    b.    Dr. Chau experiences longer recovery times for common illnesses and requires an arsenal of potent (and potentially toxic) antibiotics to treat her illnesses.

    c.    The antibiotics Dr. Chau must take exacerbate the underlying symptoms of system sclerosis and when combined with disease fighting drugs create toxicity issues that require the removal of the drugs that temporarily control her symptoms.

6.    Since Dr. Chau is likely to be chronically ill with every illness she contracts, she is equally likely to be more of a threat (than other Internal Medicine Physicians) to any patients she might treat, in contravention of her oath to do no harm.

7.    It is well-documented that Dr. Chau's flare-ups from her auto-immune diseases are triggered by stress and reducing stress levels assist in reducing the frequency of flare-ups.

8.    The stress of treating patients in emergency situations and the stressful experience of the death of a patient or a dying patient renders Dr. Chau disabled from performing the essential duties of her Own Occupation.

9.    The side-effects of pain medications Dr. Chau must take can result in cognitive impairment, memory loss and impaired judgment and such cognitive impairments put patients at risk which is contrary to her oath to do no harm.

10.    As part of Dr. Chau's treatment she is required to engage in low-impact exercise to keep her muscles toned and her circulatory system functioning properly.

11.    When her low-impact exercise activity is interfered with her muscles and joints become inflamed and the disease progresses.

12.    Part of Dr. Chau's treatment requires rest, relaxation and normal sleep patterns.

**C.  Conflict And Financial Bias Are The Only Explanation For Hartford's Termination Of Chau's LTD Benefits Since Hartford Ignored The Overwhelming Evidence Of Chau's Medical Condition That Disable Her From Each Of The Essential Duties Of Her Own Occupation As A Patient Treating Internal Medicine Physician In The General Workplace As Articulated In Hartford's Termination Letter**

Hartford lists the essential duties of Dr. Chau's own occupation in their letter terminating her LTD benefits. Yet, Hartford ignored Chau's medical conditions that disable her from each of the essential duties of her own occupation as a patient treating internal medicine physician.

Chau's auto-immune diseases disable her from each of those essential duties, articulated by Hartford, as follows:

1. **Examine Patients**

    a.    Dr. Chau is impaired because of her heightened susceptibility to exposure to infection.

    b.    Cognitive impairment from pain medications.

    c.    Physical examinations. Impairment during flare-ups.

    d.    Inability to interpret physical exam when finger pain and numbness and joint rigidity occurs during flare-ups.

    e.    Stress of patient emergencies, dying patient and patient death.

2. **Diagnostic Testing**

    a.    Cognitive impairment from pain medications.

    b.    Physical impairment during flare-ups.

    c.    Stress of patient emergencies and dying patient.

3. **Evaluating Test Results**

    a.    Cognitive impairment from pain medications.

    b.    Stress of patient emergencies and dying patient.

4. **Taking and Writing Patient Histories**

    a.    Cognitive impairment from pain medications.

    b.    Physical impairment during flare-ups.

    c.    Stress of patient emergencies and dying patient.

5. **Evaluating All Presenting Symptoms and Problems**

    a.    Cognitive impairment from pain medications.

    b.    Physical impairment during flare-ups.

    c.    Stress of patient emergencies and dying patient.

6.    **Prescribing Medications**

    a.    Cognitive impairment from pain medications.

7.    **Diagnosing Patient Problems**

    a.    Cognitive impairment from pain medications.

    b.    Physical impairment during flare-ups.

    c.    Stress of patient emergencies and dying patient.

8.    **Developing Treatment Plans for Patients**

    a.    Cognitive impairment from pain medications.

    b.    Stress of patient emergencies and dying patient.

    c.    Requires Hospital Calls.

    d.    Exposure to hospital infections.

9.    **On-Call Duty**

    a.    Stress triggers flare-ups.

    b.    Interferes with normal sleep patterns triggering flare-ups.

    c.    Stress of patient emergencies, dying patient and patient death.

    d.    Creates fatigue.

    e.    Requires Hospital Calls.

    e.    Exposure to hospital infections.

10.    **Lift/Carry Push/Pull 10-20 pounds**

    a.    Difficult during flare-ups.

    b.    Joint swelling and muscle pain.

11.    **Standing and Walking To a Significant Degree**

    a.    Difficult during flare-ups.

    b.    Exacerbates symptoms of disease during flare-ups.

12

III.   **HARTFORD'S   FALSE   AND   UNSUBSTANTIATED   INSURANCE   FRAUD
ALLEGATION   AGAINST   CHAU   JUSTIFIES   DISCOVERY   BEYOND   THE
ADMINISTRATIVE RECORD BECAUSE CONFLICT AND FINANCIAL BIAS ARE
THE ONLY EXPLANATION FOR HARTFORD'S DUBIOUS CONTRIVANCE**

The administrative record includes entries in Hartford's business record logs of alleged
telephone calls from an "anonymous tipster" alleging that Chau is committing insurance fraud
because she goes to the gym. Hartford does not identify the individual that ostensibly made said
entry in the log. Conveniently for Hartford it is an "anonymous tipster." There is no indication that
Hartford expended any effort to verify the existence, veracity or bias incentive of this alleged
"anonymous tipster." Nevertheless, despite Hartford's knowledge that Chau's auto-immune diseases
require therapeutic exercise (*i.e.*, low impact exercise regime and stress reduction) to enable her to
maintain minimum daily functions, and delay the potentially fatal progression of her auto-immune
diseases, Hartford embarked upon a witch hunt and covert surveillance of Chau.

Despite Hartford's extreme efforts (including day in the life films, etc.), these allegations
could not be substantiated. However, the bell cannot be un-rung. The glaring bias created when
insurance fraud allegations are conveyed to Hartford's hired IME, Doctor Futerman, and the other
medical reviewers, cannot be discounted. Significantly, although there is no truth to the allegations,
Hartford in its termination letter, and Hartford's third party vendor medical opiners, identify the same
gym allegations as a basis for the medically unsound opinions, benefits termination and flip-flop on
Chau's disability. Reliance upon this basis, which is the therapeutic treatment to forestall and/or
mitigate the fatal effects and complications of her auto-immune diseases, demonstrates that the
conclusions are based on medically unsound opinions.

At a minimum, the deleterious impact and dubious nature of Hartford's false and
unsubstantiated insurance fraud allegations against Chau identifies specific conduct by Hartford
requiring discovery related to its conflict and financial bias. Moreover, it demonstrates a reasonable
chance that the requested discovery will satisfy the "good cause" standard for allowable discovery

13

and the gravity of the weight accorded to the conflict bias. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 227-29 (E.D.N.Y. 2008).

Certainly the "dog whistle" type of message Hartford conveyed to its third party vendors, with the false and unsubstantiated charge of insurance fraud, provided color and cover for its third party vendors to render medically unsound opinions that served Hartford's conflict and financial bias interests in terminating Chau's LTD benefits.

## IV.   HARTFORD'S FALSE AND UNSUBSTANTIATED INSURANCE FRAUD ALLEGATION AGAINST CHAU JUSTIFIES DISCOVERY BEYOND THE ADMINISTRATIVE RECORD BECAUSE HARTFORD'S DUBIOUS CONTRIVANCE UNDERMINES ITS FIDUCIARY DUTY TO PROVIDE CHAU A FULL AND FAIR REVIEW OF HER CLAIM

Hartford's mysterious and thin allegations of insurance fraud against Chau, in the face of overwhelming evidence of her medical disabilities, require, at minimum, extra record discovery and scrutiny with respect to Chau's claims against Hartford including Hartford's breach of its fiduciary duties under the ERISA laws. Chau's right to a full and fair review of her claim by Hartford includes assessment of her disabilities unfettered by the bias of false allegations of wrongdoing by her. *See Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 490 (2d Cir. 2013) (ERISA fiduciary not permitted to adopt an adversarial approach toward benefits determinations).

The Court should permit Chau to request discovery of the information related to the false allegations and related to its impact on the decision-makers and the decision-making process. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008) (inconsistent position that is financially advantageous gives more weight to the conflict financial bias factor); *Alberigo v. The Hartford*, 891 F. Supp. 2d 383, 401 (E.D.N.Y. 2012) (noting case finding denial of benefits was "irrational" where the claimant's medical condition worsened); *Puri v. Hartford Life & Accident Ins. Co.*, 784 F. Supp. 2d 103, 105 (D. Conn. 2011) (allowing extra record discovery of decision-maker's pre-conceived bias and financial benefit); *Mergel v. Prudential Life Ins. Co. of Am.*, 2009 U.S. Dist. LEXIS 85594,

*5 - *6 (S.D.N.Y. Sept. 1, 2009) (allowing extra record discovery of administrator payor's structural conflict financial bias, inconsistent medical opinions, and disability determination).

## V. CHAU'S CONTINUED ILLNESSES AND CURRENT GRAVE HEALTH STATUS IS A MANIFESTATION OF AND RELATED TO THE SAME MEDICAL CONDITIONS THAT HARTFORD FOUND DISABLING UNDER THE PLAN IN 2004 AND PROVIDES ADDITIONAL SUPPORT FOR EXTRA RECORD DISCOVERY

Chau has been suffering from many of the complications associated with the same medical conditions, including systemic sclerosis, existing at the time Hartford originally determined she was disabled from performing the essential duties of her own occupation in March, 2004. For example, complications of her systemic sclerosis now threaten to render her blind. These complications were known by Hartford in 2004, when Hartford originally determined she was disabled from performing the essential duties of her own occupation and in 2013 when Hartford terminated her LTD benefits. *See supra* Argument, Section II. The administrative record includes all of this documented medical history information and medical records in Hartford's possession that they chose to ignore. *Id.*

Hartford's willful blindness and conscious disregard of these complications, as evident in the administrative record, provides additional support for extra record discovery on the conflict and financial bias factor. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 227-29 (E.D.N.Y. 2008).

## VI. UNDER THE HIPAA LAWS CHAU IS ENTITLED TO EXTRA RECORD DISCOVERY

Hartford's conflicted and biased treatment of Chau has resulted in disclosures of Chau's private medical information to numerous third parties that are unknown to Chau. Under the HIPAA laws, Chau is entitled to know all those individuals and entities to whom her private medical information was disclosed. *See* Health Insurance Portability And Accountability Act Of 1996, Public Law 104-191 (1996).

Thus, Chau should not be prevented from obtaining the extra record discovery related to her HIPAA rights implicated by Hartford's conduct in connection with her LTD benefits.

## VII.  SCOPE AND NATURE OF DISCOVERY REQUESTED

It is expected that document discovery, written discovery, and depositions (as necessary) will be required for the following:

### A.  Conflict Bias

1.      The relationship between Hartford and the third party vendors engaged by Hartford in connection with Chau's LTD benefit claim. These include: Howard Futerman, M.D., Evelyn K. Balogun, M.D., David Hoenig, M.D., Dayton Dennis Payne, M.D., Reliable Review Services, Inc., Examworks Group, Inc., and those involved with the investigation of Hartford's false allegations of insurance fraud against Chau.

2.      Communications between Hartford and the third party vendors engaged by Hartford in connection with Chau's LTD benefit claim. These include: Howard Futerman, M.D., Evelyn K. Balogun, M.D., David Hoenig, M.D., Dayton Dennis Payne, M.D., Reliable Review Services, Inc., Examworks Group, Inc., and those involved with the investigation of Hartford's false allegations of insurance fraud against Chau.

3.      Hartford's, kill rate (policy terminations and claims denials).

4.      Hartford's third party vendors' kill rates (findings of no disability).

5.      Qualifications of Hartford employees and the third party vendors engaged in connection with Chau's LTD benefits.

6.      Hartford's employee compensation, incentive and bonus pay programs.

7.      Employee guidelines for LTD claims processing and review.

8.      Hartford guidelines and criteria for selecting third party vendors for LTD claims processing and review.

9.      Guidelines referred to by IME Dr. Futerman and those that were followed by Evelyn K. Balogun, M.D., David Hoenig, M.D., Dayton Dennis Payne, M.D., Reliable Review Services, Inc., Examworks Group, Inc.

10.     Basis for "anonymous tipster" allegations of Insurance Fraud and reliance thereupon.

11.     The number of Hartford claims that include "anonymous tipsters" providing information to Hartford about Claimants or recipients of benefits and Hartford's conduct in connection therewith.

12.     Relevant employee evaluations.

13.     Claims manuals and personnel training protocols.

14.     Compensation agreements, performance evaluations and statistics for third party vendors for LTD claims processing and review.

15.     Underwriting file for the Plan.

**B.  Anonymous Tipster False Allegations Of Insurance Fraud**

1.      Identification of all persons it was communicated to and the nature and substance of the communications.

2.      Impact it had on the decision-making and the decision-makers in connection with Chau's LTD benefits.

3.      All information related to the Anonymous Tipster and the alleged tip.

**C.  Identification of all individuals and entities to whom Hartford disclosed Chau's private medical/health records and information.**

## CONCLUSION

Under controlling authority, and as acknowledged by Hartford in publicly available position statements, the Second Circuit has taken a relatively broad approach to allowing extra record conflict discovery in ERISA cases. Hartford's dubious and irrational conduct in regards to Chau's LTD benefits termination demands nothing less.

17

Therefore, for all of the reasons and authority set forth above, Chau respectfully requests that the Court grant this ERD Motion and permit Plaintiff to conduct the extra record discovery as described herein.


Dated: May 16, 2016
      Syosset, New York


                                      Respectfully submitted,

                                      THE RANDO LAW FIRM P.C.



                              By: s/_____
                                  Robert J. Rando, Esq. (RR-5765)
                                  6800 Jericho Turnpike – Suite 120W
                                  Syosset, New York 11791
                                  (516) 799-9800 (o) • (516) 799-9820 (f)
                                  Attorney for Plaintiff,
                                  Elizabeth Boey Chau, M.D.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a true and accurate copy of the annexed **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO REQUEST EXTRA RECORD DISCOVERY** and accompanying **DECLARATION OF ROBERT J. RANDO, ESQ.** with attached EXHIBITS; to be served by United States Priority Mail and Electronic ECF Filing, on the following counsel:

>Michael H. Bernstein, Esq.
>Matthew P. Mazzola, Esq.
>SEDGWICK LLP
>225 Liberty Street, 28th Floor
>New York, NY 10281-1008;
>Attorneys for Defendant, Hartford Life Insurance Company;

this 16th day of May, 2016.

>s/_____
>Robert J. Rando, Esq. (RR-5765)