```
                                                              USDC SDNY
                                                              DOCUMENT
UNITED STATES DISTRICT COURT                                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                                 DOC #: _____
------------------------------------------------------------- X  DATE FILED: 12/13/2016
ELIZABETH BOEY CHAU, M.D.,                   :
                                             :
                              Plaintiff,     :
                                             :                1:14-cv-8484-GHW
                -v -                         :
                                             :                MEMORANDUM OPINION
HARTFORD LIFE INSURANCE COMPANY,             :                    AND ORDER
                                             :
                              Defendant.     :
------------------------------------------------------------- X
```

GREGORY H. WOODS, District Judge:

Dr. Chau brings this suit under the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging the termination of her long-term disability insurance benefits by Hartford Life Insurance Company ("Hartford"). She also asserted various state law claims against Defendants, which this Court has previously held to be expressly preempted by ERISA. Now before the Court is Dr. Chau's motion for extra-record discovery on the issue of Hartford's alleged conflict of interest as both the administrator and the payor of her disability claim. Defendants oppose extra-record discovery. For the reasons that follow, the Court concludes that limited discovery is warranted on this issue.

I.  **BACKGROUND**

The Court assumes familiarity with the facts pleaded in Dr. Chau's complaint, most of which are not directly relevant to the Court's review of Dr. Chau's motion. Of relevance here are Dr. Chau's allegations that Hartford's termination of her benefits was motivated by its conflicting financial self-interest. First Am. Compl. ("AC"), Dkt. No. 26, ¶¶ 38, 48-50, 54-66. This "conflicting financial self-interest" flows from Hartford's dual role as the evaluator and payor of claims made under the relevant benefit plan. In other words, Hartford is responsible both for determining who is eligible for benefits under the plan and for paying those benefits.

In *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 112-15 (2008), the Supreme Court held that a conflict of interest exists for ERISA purposes when a plan administrator both evaluates claims for benefits and pays benefits claims. The parties do not dispute that Hartford served in this dual role. And, given the Court's decision in *Glenn*, Hartford cannot dispute that a conflict exists. Instead, the parties disagree as to whether this structural conflict affected Hartford's decision to terminate Dr. Chau's benefits. *E.g.*, AC, ¶ 38 (alleging that Hartford's termination of Dr. Chau's benefits was "motivated by [Hartford]'s conflicting financial self-interest"); Answer to AC, ECF No. 91, ¶ 38 (denying that allegation).

Dr. Chau contends that the structural conflict recognized in *Glenn* entitles her to conduct discovery. Mem. of Law in Supp. of Mot to Req. Extra-Record Disc. ("Pl.'s Mem."), ECF No. 95, at 1, 17. Hartford argues that Dr. Chau is not entitled to discovery because she has "fail[ed] to show, or even suggest, that conflict of interest considerations influenced Hartford's decision-making on her claim." Mem. of Law in Opp'n to Mot. ("Def.'s Mem."), ECF No. 101, at 2. For her part, Dr. Chau purports to make such a showing by arguing that Hartford's decision was so irrational and contrary to the evidence that "conflict and financial bias are the only explanation" for Hartford's termination of her benefits. Pl.'s Mem. at 5-12.

In order to decide Dr. Chau's motion, the Court must determine (1) whether she is entitled to any discovery at all and (2) if so, the appropriate scope of that discovery. The Court concludes that Dr. Chau is entitled to conduct discovery that is limited and narrowly tailored to Hartford's financial conflict of interest.

II.   DISCUSSION

The appropriateness of discovery is somewhat intertwined with the standard the Court will employ in reviewing Hartford's claim decision. "[A] denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the plan administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where a plan provides the administrator with discretionary authority, the benefits decision is reviewed for abuse of discretion. *Id.* at 111; *Pepe v. Newspaper & Mail Deliverers'-Publishers' Pension Fund*, 559 F.3d 140, 146 (2d Cir. 2009) ("Since the terms of the Plan grant the [administrator] discretionary authority to interpret the Plan, the standard governing the district court's review . . . is the arbitrary-and-capricious standard."); *Kruk v. Metro. Life Ins. Co.*, No 3:07-cv-1533 (CSH), 2009 WL 1481543, at *2 n.1 (D. Conn. May 26, 2009) ("The term 'arbitrary and capricious' is used interchangeably with the phrase 'abuse of discretion,' and either describes the deferential standard applied when an ERISA plan reserves discretion for the administrator." (citations omitted)). Because the plan at issue here confers discretion on Hartford in making benefits determinations, the termination of Dr. Chau's benefits will be reviewed under the arbitrary-and-capricious/abuse of discretion standard. *See* Group Benefit Plan, Def.'s Mem., Ex. A, at 3 ("The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Plan.").

Whether the decision is reviewed *de novo* or deferentially, the district court's review is typically limited to the evidence that the plan administrator itself considered, *i.e.*, the administrative record. *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 66-67 (2d Cir. 1997) (*de novo* review); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) (deferential review). Courts have discretion, however, to admit evidence outside the record if the plaintiff shows "good cause" to do so. *E.g.*, *Krauss v. Oxford Health Plans, Inc.*, 517 F. 3d 614, 631 (2d. Cir. 2008). "A demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' that may, under certain circumstances, warrant the introduction of additional evidence." *Biomed Pharms., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) (citing *DeFelice*, 112 F.3d at 67).

Although the Court must find "good cause" to consider extra-record evidence in its review of a claim decision, the standard for permitting discovery to supplement the record is "far less stringent." *Joyner v. Continental Cas. Co.*, 837 F. Supp. 2d 233, 240-41 (S.D.N.Y. 2011) (quoting *Baird v. Prudential Ins. Co. of Am.*, No. 09-cv-7898, 2010 WL 3743839, at *8 (S.D.N.Y. Sept. 24, 2010) ("[T]he standard for permitting discovery to supplement the administrative record in an ERISA case is far less stringent than the standard for actually considering that outside evidence when reviewing the decision of the Plan Administrator . . . .")); *see also Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 229 (E.D.N.Y. 2008) ("[T]he decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence." (citation omitted)). "But what that 'less stringent' standard is remains somewhat unclear." *Joyner*, 837 F. Supp. 2d at 241.

Some courts have held that, although the plaintiff need not make a full showing of "good cause" to warrant discovery, she must nonetheless "show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Yasinoski v. Conn. Gen. Life Ins. Co.*, No. 07-cv-257, 2009 WL 3254929, at *5 (E.D.N.Y. Sept. 30, 2009); *Trussel v. Cigna Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390-92 (S.D.N.Y. 2008). Some of those courts have elucidated that standard by holding that a plaintiff seeking discovery on the basis of a conflict of interest must point to "specific examples from the administrative record showing that [the plan administrator] exerted improper influence over Plaintiff's treating physician or other review doctors." *E.g.*, *Quinones v. First Unum Life Ins. Co.*, No. 10-cv-8444 (SAS), 2011 WL 797456, at *3 (S.D.N.Y. Mar. 4, 2011) (quoting *Yasinoski*, 2009 WL 3254929, at *11). Defendants rely upon that standard in opposing Dr. Chau's motion.

Other courts have rejected the imposition of any special threshold showing for permitting conflict-of-interest discovery in light of the Supreme Court's decision in *Glenn*. The Court in *Glenn* resolved two questions. First, as noted above, the Court held that a conflict of interest exists for ERISA purposes when a plan administrator acts in the dual role of evaluating and paying benefits

4

claims, even when the administrator is not the plan participant's employer. *Glenn*, 554 U.S. at 112-15. The Court then considered how that conflict should be taken into account on judicial review of a discretionary benefit determination. The Court rejected the approach that had been taken by some lower courts, including those within the Second Circuit,[1] wherein the standard of review was shifted from arbitrary-and-capricious to *de novo* when a conflict of interest was present. *Id.* at 115-17. In reaching that conclusion, the Court explained that it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." *Id.* at 116-17. Instead, the Court stated that district courts "should consider" a financial conflict of interest as a "factor" in determining whether a plan administrator abused its discretion, the significance of which will vary depending upon the circumstances of the particular case. *Id.* at 108. By way of further guidance, the Court explained:

> [A]ny one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* at 117 (citations omitted).

In light of *Glenn*'s command that district courts consider the evaluator/payor conflict as a factor in its arbitrary-and-capricious review, some courts in this circuit and others have held that at least some discovery is warranted when such a conflict exists, even if there is no evidence in the administrative record that the conflict tainted the administrator's decision.

---

[1] *See Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1256 (2d Cir. 1996) (holding that, "[i]f the court finds that the administrator was in fact influenced by the conflict of interest, the deference otherwise accorded the administrator's decision drops away and the court interprets the plan *de novo*").

*Hogan-Cross v. Metro. Life Ins. Co.*, 568 F. Supp. 2d 410, 414 (S.D.N.Y. 2008) (Kaplan, J.) ("Accordingly, MetLife's notion that discovery is inappropriate in this case because 'there is no evidence in the administrative record of any actual conflict,' a dubious proposition to begin with before *Glenn*, is misguided.  The question here, as in all cases, is whether the discovery sought is relevant in itself or 'appears reasonably calculated to lead to the discovery of admissible evidence.'" (citations omitted)); *Joyner*, 837 F. Supp. 2d at 242 (Rakoff, J.) ("Given *Glenn*'s command that district courts '*should* consider' evidence of a financial conflict of interest, it appears reasonable to allow plaintiff the opportunity to discover evidence the Court may find gives it good cause to go outside the administrative record.  And since *Glenn* warned against erecting procedural hurdles to showing a financial conflict, the Court concludes that it is unwarranted to impose a standard such as a 'reasonable chance' that discovery will lead to 'good cause' at the discovery stage of litigation." (citations omitted)); *see also Denmark v. Liberty Life Assurance Co. of Bos.*, 566 F.3d 1, 10 (1st Cir. 2009) ("The majority opinion in *Glenn* fairly can be read as contemplating some discovery on the issue of whether a structural conflict has morphed into an actual conflict."); *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010) ("We take *Glenn*'s admonition against special rules to apply beyond the particular issue addressed in *Glenn*.  We think it also commands that we not create any special rules for discovery related to a dual role conflict of interest. Instead, we must apply Federal Rule of Civil Procedure 26(b) to discovery requests seeking information related to a dual role conflict of interest, just as we would apply that rule to other discovery requests.").

This Court agrees with that approach and declines to apply the "reasonable chance" standard to the extent that it would require Dr. Chau to point to specific evidence in the administrative record that Hartford's structural conflict affected its decision just to gain

entitlement to discovery on that very issue. For one thing, the "reasonable chance" standard predates the decision in *Glenn*,[2] and it is not clear that post-*Glenn* decisions applying that standard have fully considered its impact on discovery. More importantly, the very factual examples provided in *Glenn* to guide district courts' weighing of the conflict—namely, whether there is a "history of biased claims administration" and whether the administrator has taken "active steps taken to reduce potential bias and to promote accuracy"—are facts that would rarely be expected to appear in the record before the administrative reviewer. It is difficult to understand how district courts could consider such case-specific facts in assigning weight to a given conflict without permitting some discovery.[3] *See Barker v. Life Ins Co. of N. Am.*, 265 F.R.D. 389, 395 (S.D. Ind. 2009) ("[T]he only way for the district courts to implement *Glenn*'s directive—to determine the weight to be accorded the conflict of interest factor in light of the 'circumstances' of the case—is to determine what those circumstances are. This usually cannot be accomplished without discovery." (internal citation omitted)).

To be sure, the "reasonable chance" standard may be workable as a general standard

---

[2] For example, the decision in *Trussel*, 552 F. Supp. 2d 387, dates from April 4, 2008, approximately two months before the decision was issued in *Glenn*.

[3] In a concurring opinion in *Glenn*, Chief Justice Roberts expressed concern regarding the breadth and indeterminacy of the majority's approach to analyzing the dual-role conflict in the context of arbitrary-and-capricious review of a claim decision. *See* 554 U.S. at 119-20 (Roberts, C.J., concurring) ("The majority's approach would allow the bare existence of a conflict to enhance the significance of other factors already considered by reviewing courts, even if the conflict is not shown to have played any role in the denial of benefits. The end result is to increase the level of scrutiny in every case in which there is a conflict—that is, in many if not most ERISA cases—thereby undermining the deference owed to plan administrators when the plan vests discretion in them."). As a reviewing court, this Court appreciates Chief Justice Roberts's concerns, but the majority decision in *Glenn* governs. Additionally, as noted above, the question of whether to permit discovery is distinct from the question of whether the court should actually consider that evidence. Regardless of the extent to which the majority opinion in *Glenn* requires (or permits) district courts to give weight in its review to an administrator's dual-role conflict even absent evidence that the conflict actually impacted the claim decision, this Court concludes that *Glenn* requires it to permit discovery regarding the conflict. Indeed, Chief Justice Roberts's concurrence supports the conclusion that such discovery is necessary to ascertain the weight that the conflict should be accorded. *Id.* at 123 (Roberts, C.J., concurring) (stating that evidence that the insurer provided bonuses for "claims savings" or evidence of a pattern of denying meritorious claims could "support a finding that an administrator abused its discretion").

for permitting extra-record discovery in ERISA cases. In this Court's view, however, *Glenn* overrides such a standard with respect to dual-role conflict-of-interest discovery, given that district courts are required to consider the specific circumstances of the conflict in their review. This approach also offers the benefit of not inviting plaintiffs to point to the merits of the administrator's claim decision—as Dr. Chau does here, arguing that the decision was so contrary to the evidence that it could only be explained by Hartford's conflict—in an attempt to make a showing that discovery is warranted.

In sum, this Court agrees with Judges Rakoff and Kaplan that an ERISA plaintiff challenging a claim determination made by a dual-role administrator is entitled to conduct some discovery. The Court also agrees with Judge Rakoff, however, that this "does not afford plaintiff free reign over discovery on any issue in this case." *See Joyner*, 837 F. Supp. 2d at 242. Accordingly, Dr. Chau may conduct discovery in this case that is narrowly tailored to the financial conflict of interest inquiry discussed in *Glenn*—that is, discovery targeted to reveal evidence of the likelihood that Hartford's structural conflict impacted its decision or evidence that it actually did impact its decision. She may not conduct discovery that relates solely to the merits of Hartford's claim decision. For guidance on the contours of permissible discovery, the Court directs Dr. Chau to the kinds of evidence described as relevant to the degree of weight to be accorded a conflict of interest in *Glenn*, as well as the kinds of specific discovery requests held permissible in *Joyner* and *Hogan-Cross*.

As in *Joyner*, the Court will limit this discovery to document requests and a deposition of a representative of Hartford pursuant to Fed. R. Civ. P. 30(b)(6), without prejudice to Dr. Chau later seeking to depose other witnesses. Whether any evidence that Dr. Chau obtains will satisfy the "good cause" standard such that the Court can consider it in reviewing the termination of her benefits is a separate issue that is not yet ripe for decision.

### III. DR. CHAU'S REQUEST FOR DISCOVERY PURSUANT TO HIPAA

Dr. Chau contends that she is entitled, pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), to discover the identities of all individuals and entities to whom her medical information was disclosed. Pl.'s Mem. at 15. Dr. Chau does not cite any particular provision of HIPAA for this proposition, nor does she satisfactorily explain why this argument is relevant to her motion for extra-record discovery or even to this Court's eventual arbitrary-and-capricious review of Hartford's claim decision. The Court observes that 45 C.F.R. § 164.528 provides individuals with a right to receive an accounting of disclosures of their protected health information under certain circumstances. That right may be exercised without a court order.

### IV. DR. CHAU'S REQUEST FOR DISCOVERY INTO THE COMPLETENESS OF THE RECORD

In a single paragraph at the end of her reply brief, Dr. Chau states that her motion for extra-record discovery is based not only on Hartford's financial conflict of interest, but also on incompleteness of the administrative record. Reply Mem. of Law in Supp. of Mot., ECF No. 102, at 8. In particular, she contends that "the administrative record does not appear to include the arrangements, agreements and communications related to Chau, between Hartford and the IME doctor, Hartford and its reviewing doctors, and Hartford and other third parties." *Id.*

Under appropriate circumstances, ERISA plaintiffs may be permitted to conduct discovery into the parameters of the administrative record. *See, e.g.*, *Porter v. Prudential Ins. Co. of Am.*, No. 05-cv-6113, 2006 WL 2242770, at *2 (S.D.N.Y. Aug. 2, 2006). The "administrative record" in an ERISA action is "the evidence that the fiduciaries themselves considered." *Miller*, 72 F.3d at 1071. Dr. Chau does not allege that these "arrangements, agreements and communications" were considered by Hartford in terminating her benefits, nor does she point to any evidence in the record suggesting that they were. Therefore, she has not provided adequate grounds to justify discovery on the basis that the record that has been disclosed to her is incomplete. *See Porter*, 2006 WL 2242770,

at *1 (denying request for discovery because plaintiff did not provide "any reason to raise questions about the parameters of the record").

### V.    CONCLUSION

For the foregoing reasons, Dr. Chau's motion for extra-record discovery is GRANTED IN PART and DENIED IN PART. Dr. Chau may conduct discovery that is consistent with the limitations set forth in this opinion.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 94.

SO ORDERED.

Dated:  December 13, 2016
New York, New York

_____
GREGORY N. WOODS
United States District Judge